IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Cassandra C. Adams, | ) | C/A No. 0:15-4356-TLW-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Exel, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, Cassandra C. Adams, filed this employment action alleging age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq., against her employer, Exel, Inc. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 23.) Adams filed a response in opposition (ECF No. 25),[1] and the defendant replied (ECF No. 26). Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion for summary judgment should be granted.

**BACKGROUND**

The following facts are either undisputed or are viewed in the light most favorable to Adams, to the extent they find support in the record. This action arises out of Adams's employment with Exel—specifically, Exel's selection of other applicants over Adams for several promotions in 2015.

---

[1] The court notes that Adams later refiled her response in opposition to Exel's motion for summary judgment to include exhibits which were not attached to the initial response and to correct at least one exhibit citation. (ECF No. 27.)

Page 1 of 12



Adams, who was born in June 1968, alleges she was not selected for these positions based on her age.

Exel hired Adams in June 2014 as a forklift operator for its Edgewell Facility in Rock Hill, South Carolina. Around July 2014, Adams was working as both a forklift operator and back-up tasker on the third shift at the Edgewell Facility.

In February 2015, Adams, who at that time was forty-six years old, applied for a promotion to two positions at the Edgewell Facility: second shift operations supervisor and third shift operations supervisor. Exel selected John McCullough for the third shift operations supervisor position. At the time of his promotion, McCullough was forty-three years old and was the lead associate on the third shift. Exel selected Jesse Cevallos for the second shift operations supervisor position. Cevallos was the lead associate for Exel's five overflow facilities throughout the Charlotte, North Carolina area.

In April 2015, Adams applied for three open positions at Exel's new Energizer Facility also in Rock Hill, South Carolina. She applied for the positions of shipping clerk, first shift tasker, and second shift tasker. Adams admitted that during the interview for these positions, she informed Exel that her first choice position was first shift tasker, her second choice was the shipping clerk position, and her third choice was second shift tasker. Adams also admitted that she did not inform Exel of any change to this preference list. In May 2015, Adams was promoted to the shipping clerk position at the Energizer Facility.[2] Arkevious Hunt, who was the first shift tasker at the Edgewell Facility, was awarded the first shift tasker position at the Energizer Facility. Hunt was thirty-five years old

---

[2] As of the date Exel filed its motion for summary judgment, it represented that Adams continued to work in that position.



at that time. Haley Kilgore, who had previous experience as a second shift tasker at the Edgewell Facility, was selected for the second shift tasker position at the Energizer Facility. Kilgore was nineteen years old at that time.

Also in April 2015, Adams applied for a promotion to the inbound scheduler position. Yolanda Houston, Customer Service Supervisor at the Edgewell Facility, interviewed several applicants for this position, including Adams. Ultimately, Houston selected Rebecca Johnson, who was thirty-five years old and had previously held the position of customer service supervisor, for the inbound scheduler position.

Adams filed the instant action on October 27, 2015, asserting age discrimination in violation of the ADEA.[3]

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger

---

[3] Although Adams's Complaint appears to include several allegations, based on the parties' memoranda, the only claims before the court appear to be claims that Exel violated the ADEA by failing to promote Adams to the various positions for which she applied in 2015.



v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks and citation omitted).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor.  Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).  The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms.  See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Burden Shifting Framework**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence.  When direct evidence is lacking as it is here, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework.  Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate,



nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks and citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[], but [was] a pretext for discrimination." Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005) (Title VII & 42 U.S.C. § 1981). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and

uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.     Adams's Claims**

Adams alleges that Exel unlawfully discriminated against her based upon her age by failing to hire her for positions that were ultimately filled by individuals substantially younger than Adams.[4] The ADEA addresses age-related employment issues by making it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The *prima facie* case standard in a failure to promote context under the ADEA is the same as under Title VII. See Martin v. Alumax of S.C., Inc., 380 F. Supp. 2d 723, 732 (D.S.C. 2005) (citing Brown v. McLean, 159 F.3d 898, 902 (4th Cir.

---

[4] Exel's motion for summary judgment addresses every promotion Adams sought during the time period asserted in the Complaint, including any allegation that Exel may have discriminated against Adams in failing to promote her to either of the two supervisory positions she applied for in February 2015. However, to the extent Adams intended to include these promotions in her claims of age discrimination, she appears to have abandoned them as Adams has failed to provide any specific argument with regard to the these positions in response to Exel's well-supported motion for summary judgment. Instead, her response focuses on three promotional decisions: first shift tasker, second shift tasker, and inbound scheduler. Therefore, the court finds that Exel is entitled to summary judgment as to any age discrimination claim Adams may be asserting with regard to Exel's failure to promote her to second shift operations supervisor or third shift operations supervisor.



1998)). Specifically, the *prima facie* case generally requires the plaintiff to show: (1) she is a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected under circumstances giving rise to an inference of unlawful discrimination. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 959-960 (4th Cir. 1996); see Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005); see also Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006) (stating to establish a *prima facie* case of age discrimination for an employer's failure to promote, a plaintiff must demonstrate that: "(1) he . . . was at least forty years old; (2) that his employer had an open position for which he applied and was qualified; (3) he was rejected despite his qualifications; and (4) the position remained open or was filled by a similarly qualified applicant who was substantially younger than the plaintiff, whether inside or outside the class protected by the ADEA").

As noted above, Adams's response in opposition to Exel's motion for summary judgment focuses on Exel's failure to promote her to the positions of first shift tasker, second shift tasker, and inbound scheduler. With regard to these positions, Exel does not rely on an argument Adams cannot establish a *prima facie* case of age discrimination. Rather, Exel argues that it had legitimate, nondiscriminatory reasons for each of these promotional decisions—*i.e.*, that the other candidate was better qualified—and that Adams has no evidence that Exel's stated reasons for hiring the other candidate was a pretext for age discrimination. For the reasons that follow, the court agrees.

An employer's selection of a more qualified candidate is a legitimate, nondiscriminatory reason for rejecting another candidate. Evans, 80 F.3d at 960 ("Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision."); see also Sandhu v. Commonwealth of Va., Dep't of Conservation &



Recreation, 874 F. Supp. 122, 127 (E.D. Va. 1995) (finding that, in the context of a failure to hire claim, the "[s]election of a more highly qualified applicant is a non-discriminatory reason for rejecting another applicant") (citing Love v. Alamance Cty. Sch. Bd., 757 F.2d 1504, 1507 (4th Cir. 1985)). The assessment of relative qualifications is based on the criteria that the employer has established as relevant to the position in question. Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 259 (4th Cir. 2006) (discussing pretext in the context of discrimination based on a failure to promote).

> When a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer. But where . . . the plaintiff has made a strong showing that [her] qualifications are demonstrably superior, [s]he has provided sufficient evidence that the employer's explanation may be pretext for discrimination.

Id. at 261-62 (internal citations omitted).

Exel has presented testimony from Joseph Rehring, Operations Manager for the Energizer Facility and the decision maker with regard to the first and second shift tasker positions, as well as the shipping clerk position. (Rehring Decl., ECF No. 23-3.) Rehring declared that he interviewed Adams for each of these positions, and that Adams indicated that she preferred the shipping clerk position over the second shift tasker position. (Id. ¶¶ 3-4, ECF No. 23-3 at 1.) Rehring stated that he decided to promote Adams to the shipping clerk position "over a younger applicant, Treyon McCoy, who was 29 years old at the time." (Id. ¶ 5.) Rehring further declared that he promoted Hunt to the first shift tasker position over Adams because he concluded that Hunt was the most qualified applicant for that position, pointing out that Hunt "had significant first shift tasker experience at the Edgewell facility, which would greatly facilitate her transition to the first shift

tasker position at Energizer." (Id. ¶ 6.)  Finally, Rehring declared that he promoted Kilgore to the second shift tasker position over Adams because "(i) [Adams] told Exel she preferred the shipping clerk position over the second shift tasker position, (ii) Ms. Kilgore had previous, significant experience as a second shift tasker at Edgewell, and (iii) Ms. Kilgore had more experience than Plaintiff with LTL (less-than-load) shipments." (Id. ¶ 7, ECF No. 23-3 at 1-2.)  Rehring also stated that he found Kilgore was the most qualified applicant for the second shift tasker position.

Exel has also presented testimony from Yolanda Houston, the Customer Service Supervisor at the Edgewell Facility and the decision maker with regard to the inbound scheduler position at that location. (Houston Decl., ECF No. 23-5.)  Houston declared that she interviewed Adams as well as three to four other applicants.  Houston stated that she was seeking a individual with a customer service background because this position "is in the customer service group and requires interaction with customers." (Id. ¶ 3, ECF No. 23-5 at 1.)  Houston found that "[Adams's] experience at Exel was primarily, if not exclusively, in warehousing operations, not customer service," which Houston deemed a negative factor for Adams. (Id.)  Houston further declared that she promoted Johnson to the inbound scheduler position over Adams because she concluded that Johnson was the most qualified applicant for that position, pointing out that "Johnson had previously held the position of customer service supervisor at a different site" and therefore possessed the desired customer service experience. (Id. ¶ 4.)  Finally, Houston states that she herself was forty years old when she promoted Johnson to the inbound scheduler position. (Id. ¶ 5.)

In response, Adams argues generally that she was more qualified than the applicants selected for all of the positions.  Adams's support for this argument is limited to her assertion that she had satisfactory performance, a positive probationary review, and twenty years' shipping and receiving



experience. Although Adams has presented evidence that she may have been qualified for the positions at issue, Adams's assertions fail to show that her qualifications were "demonstrably superior" to those individuals selected or that Exel's offered reasons were false. Heiko, 434 F.3d at 261; see also DeJarnette v. Coming, Inc., 133 F.3d 293, 298-99 (4th Cir. 1998) (stating that "Title VII is not a vehicle for substituting the judgment of a court for that of the employer" and that "this Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination") (internal quotation marks and citation omitted). With regard to the first shift tasker position, in addition to Rehring's declarations, Exel points out that Adams, unlike Hunt, has not worked the first shift as a tasker, back-up tasker, or shipping clerk at Exel. Further, Adams was, in fact, awarded a promotion during the relevant time period to the position that she stated she preferred over the second shift tasker position. Finally, Adams has not directed the court to any evidence refuting Houston's determination that Adams did not possess the preferred customer service experience for the inbound scheduler position. Thus, Adams's failure-to-promote claim is deficient because she cannot show that Exel's legitimate, nondiscriminatory reason for hiring other candidates was a pretext for discrimination.

Accordingly, the court concludes that no reasonable jury could find that the defendant rejected Adams for the first or second shift tasker position or the inbound scheduler position under circumstances giving rise to an inference of unlawful discrimination. See Evans, 80 F.3d at 960. Therefore, the defendant's motion for summary judgment should be granted as to Adams's age discrimination claim based on the defendant's failure to promote her.

## RECOMMENDATION

Based on the foregoing, the court recommends that the defendant's motion for summary judgment be granted (ECF No. 23).

                                                        _____
                                                        Paige J. Gossett
                                                        UNITED STATES MAGISTRATE JUDGE

January 13, 2017
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).